[No. 12706. Department Two. October 13, 1915.]

F. C. ROBERTSON et al., Appellants, v. THOMAS FREEBURY et al., Respondents.[1]

JUDGMENT—EQUITABLE RELIEF—FRAUD—PERJURY. Perjury alone is not an equitable ground for setting aside a judgment obtained on false testimony, in the absence of extrinsic or collateral fraud in addition thereto, even if admitted.

SAME. The fact that perjury in obtaining a judgment was concealed, and peculiarly within the knowledge of the prevailing party, is not ground for setting aside the judgment; especially where the perjured witness was not cross-examined.

SAME. There are no such extrinsic or collateral facts in addition to perjury as to warrant a court of equity in setting aside a judgment for fraud, where plaintiffs in a personal injury case merely testified falsely that they were husband and wife and nothing else was done to conceal the real facts.

JUDGMENT—JURISDICTION—UNNECESSARY PARTIES — EQUITABLE RELIEF—FRAUD. In an action for personal injuries, joining an improper party as husband of the plaintiff, a single woman, does not affect the jurisdiction of the court to try the question of injury and render judgment upon the verdict; and hence does not impose upon the jurisdiction so as to warrant equitable relief.

JUDGMENT—EQUITABLE RELIEF—FRAUD — INJURY TO PARTY. The fact that plaintiffs in a personal injury case recovered judgment as husband and wife for the injuries of the wife, when she in fact was a single woman, does not injure the defendant or entitle him to equitable relief, where, by the pleadings, evidence and instructions, the recovery was limited to the losses to which the injured party was entitled if suing as a single woman.

Appeal from a judgment of the superior court for Spokane county, Blake, J., entered October 21, 1914, upon findings in favor of the defendants, in an action for equitable relief, tried to the court. Affirmed.

*Corkery & Corkery* and *Robertson & Miller*, for appellants Robertson *et al.*

*George W. Korte* and *Cullen, Lee & Matthews*, for appellant Chicago, Milwaukee & Puget Sound Railway Company.

*Plummer & Lavin*, for respondents.

[1]Reported in 152 Pac. 5.

ELLIS, J.—This action grows out of the action of Thomas Freebury, Allie Freebury and W. H. Plummer against Chicago, Milwaukee & Puget Sound Railway Company and Bates & Rogers Construction Company, which we shall hereafter refer to as the damage suit. That action was prosecuted, both in the lower court and on appeal to this court, by W. H. Plummer as principal counsel for the plaintiffs. By direction of the court, he was joined as plaintiff in that action by reason of his contingent interest in any judgment which might be recovered therein. In October, 1912, the plaintiffs in that action recovered a judgment for $12,000. The defendants appealed, and the judgment was by this court affirmed on January 23, 1914. *Freebury v. Chicago, Milwaukee & P. S. R. Co.,* 77 Wash. 464, 137 Pac. 1044.

In February, 1914, Robertson & Miller, a firm of attorneys in the city of Spokane, commenced this action to recover on a contract of employment by Allie Freebury to prosecute an action for the same injuries for which she recovered judgment in the damage suit above mentioned. They sought to enforce a lien on the moneys realized on that judgment and asked for an injunction to prevent the disbursement of such moneys. The Freeburys, the railway company, the construction company and W. H. Plummer, and his present partner, Joseph Lavin, were made defendants. In March, 1914, Robertson & Miller, whom we shall designate throughout as plaintiffs, filed an amended complaint against the same defendants, alleging that they had discovered that Thomas Freebury and Allie Freebury, plaintiffs in the damage suit, defendants in this, were not husband and wife, and that the judgment in the damage suit was by reason of that fact a fraud upon the defendants in that suit and upon the court; that they had been employed by Allie Freebury after her injury to bring the damage suit; that subsequently W. H. Plummer was employed by Thomas Freebury for the same purpose; that thereafter, by agreement between the Freeburys, Plummer and the plaintiffs, Robertson & Miller,

it was arranged that Plummer and the plaintiffs should together prosecute the damage suit and divide one-half of the recovery between them as their fees; that, in disregard of that agreement, Plummer prosecuted the damage suit, refusing to permit the plaintiffs to participate therein; that, on the affirmance by this court of the judgment recovered in the damage suit against the railway company, that company paid the amount of the judgment, with interest, into court, and that the clerk of the court had paid the same to Plummer & Lavin; that the judgment in the damage suit, by reason of its being procured through fraud and perjury, ought to be set aside and the moneys paid thereon held as a trust fund for the compensation of Allie Freebury and the plaintiffs, under their contract with her. The plaintiffs disclaimed any right to compensation from the moneys obtained by that judgment, unless the judgment be set aside and the money declared a trust fund.

The defendants Chicago, Milwaukee & Puget Sound Railway Company filed a complaint in intervention in the nature of a cross-complaint, setting forth the bringing of the damage suit by the Freeburys, the recovery of a judgment for $12,000 in that suit, the affirmance of that judgment in the supreme court, the payment into court of that judgment, which with interest amounted to $13,133.57, and the payment of the money so paid by the clerk of the court to Joseph Lavin. It was further alleged, on information and belief, that the money is still held by Plummer & Lavin and that no part of it has been paid to the Freeburys; that on March 5, 1914, the intervener was advised, and now believes and alleges, that the judgment in the damage suit was obtained through fraud, in that Thomas Freebury and Allie Freebury were not and are not husband and wife or in any wise related to each other; that Allie Freebury had theretofore been married to one Gus Crawford and is still his wife, all of which was discovered subsequent to the rendition of the judgment in the damage suit and the payment of the money

into court; that the Freeburys, Plummer and Lavin are
threatening to dispose of the money; that, by reason of the
fraud perpetrated in the trial of the damage suit, the de-
fendants therein did not have a fair trial, and that "said
defendants in said suit, and each of them, have a good, valid
and meritorious defense to said action;" that an emergency
exists; that unless restrained the defendants herein will dis-
burse the funds; that the Freeburys are wholly insolvent
and that the intervener has no adequate remedy at law.    The
prayer is for a temporary injunction restraining the Free-
burys and Plummer & Lavin from disbursing the money and
requiring them to pay it to the clerk of the court; that a
judgment be entered setting aside and holding for naught
the judgment in the damage suit, and awarding the inter-
vener judgment against Thomas Freebury and Allie Free-
bury and Plummer & Lavin for the full sum of $13,133.57,
with interest.

The defendants Thomas and Allie Freebury and Plummer
& Lavin filed separate answers to both the amended com-
plaint of the plaintiffs and the cross-complaint of the inter-
vener.    It is unnecessary to notice these answers further than
to state that they put in issue the several allegations of the
complaint and cross-complaint, except they admitted the
rendition of the judgment in the damage suit, its affirmance
by this court, the payment thereof to the clerk of the court,
the satisfaction of that judgment of record, the payment of
the money by the clerk to Lavin for Plummer, and allege that
Lavin has no interest in the matter.    It was further alleged
that all the money has been disbursed in payment of the ex-
penses of suit, doctor's bills, etc., except $3,300, which is
now held by Plummer under the restraining order which it
appears was issued on the plaintiffs' original complaint.
The affirmative matters in these answers was traversed by
replies of the intervener railway company.

The cause was tried to the court without a jury.    The
evidence is so voluminous as to render it impracticable to

notice more than its salient features. It shows, and the court found, that Allie Freebury had been married in the year 1901 to one Gus Crawford, from whom she had never obtained a divorce; that she had not lived with him nor heard from him since the year 1905, prior to the commencement of the damage suit, nor up to the commencement of the present action; that the complaint in the damage suit alleged that Thomas Freebury and Allie Freebury were husband and wife; that this allegation was denied by the answers of the defendants in that action; that in the complaint in that action no claim was made by Thomas Freebury for damages on his own account personal to himself resulting from the injuries to Allie Freebury; that no evidence touching the damages was offered or admitted in the trial of the damage suit which would not have been admissible if Allie Freebury had brought and prosecuted that action in her own name and on her own behalf; that the instructions given by the trial court in that action limited the recovery to damages sustained by her on account of her personal injuries and for her own medical bills, all of which she would have been entitled to recover had not Thomas Freebury's name been incorporated in the complaint as party plaintiff; that, at the time of the commencement and prosecution of the damage suit, Thomas Freebury and Allie Freebury were not legally husband and wife; that neither Plummer, Robertson & Miller nor the railway company knew of the actual legal relation existing between the Freeburys, and that the defendants Plummer & Lavin were neither of them guilty of any fraud in respect to that suit or the satisfaction of the judgment. The testimony of both Thomas Freebury and Allie Freebury was to the effect that, when they testified in the damage suit that they were husband and wife, they thought they were such by reason of the fact that they had in 1908 contracted a common law marriage in the state of Montana and had ever since lived together as husband and wife, and that to them had been born a child now four or five years old. The court

found that, in bringing the damage suit and in testifying that they were husband and wife, the Freeburys did not do so for the purpose of defrauding the intervener, and that, as a matter of fact, the bringing of that suit by the Free-burys as husband and wife did not operate to defraud or prejudice the interests of the intervener in the trial and determination of the damage suit, and that the result of the damage suit would have been the same if Allie Freebury had brought the suit in her own name, she living separate and apart from her real husband at the time.

The court entered a judgment vacating the temporary restraining order which had been issued on the application of the plaintiffs, denying the temporary injunction prayed for in both the complaint and cross-complaint, denying a permanent injunction and the appointment of a receiver prayed for in the complaint and cross-complaint, denying any relief to either the plaintiffs or the intervener in this action, and adjudging that the defendants have and recover from the plaintiffs and intervener their costs and disbursements. The plaintiffs and the intervener have appealed.

The judgment of the trial court must be affirmed for two reasons.

I. Though there are some cases which hold that equity may grant relief and set aside a judgment obtained by means of false testimony, especially where the testimony was produced for that purpose by the successful party, the great weight of authority is to the effect that the mere fact that perjury was committed by the prevailing party or his witnesses at the trial is no ground for equitable interference with the judgment as for fraud. This court has in a recent case announced and followed that rule. In *Meeker v. Waddle*, 83 Wash. 628, 145 Pac. 967, it was sought by a complaint in the nature of a bill in equity to set aside a decree of distribution. The only ground of fraud alleged or attempted to be proven was that the defendant had falsely represented that

the land in controversy was the community property of himself and his deceased wife. We there held that, even assuming that the court's judgment was based upon perjured testimony, that fact was unavailing, for the reason that judgments or decrees of a court of justice cannot be set aside on a collateral attack as being fraudulently obtained upon the sole ground that they were obtained on perjured evidence, without some other extrinsic or collateral fact entering into and constituting fraud in the transaction. We said:

"If decrees were to be set aside upon the mere ground that they were based upon perjured testimony, decrees might never become final, for the decree which held that a former decree was founded upon perjured testimony might itself later be attacked upon the ground that it was procured by perjured testimony, and so on *ad infinitum*. We are convinced, therefore, that there were not sufficient facts either stated in the complaint or proven at the trial by respondent to entitle respondent to recover, and that the judgment of nonsuit moved for by appellant should have been granted."

In *McDougall v. Walling*, 21 Wash. 478, 58 Pac. 669, 75 Am. St. 849, and again in *Friedman v. Manley*, 21 Wash. 675, 59 Pac. 490, both of which seem to have been direct proceedings under the statute for the vacation of judgments within one year, this court said:

"Perjury is not specified in our statute as a distinctive ground for vacating a judgment. There must, at any rate, be connected with it such circumstances as will relieve the opposite party from all implication of want of diligence, and deceive him completely in the nature of the testimony."

Since the question is here again presented, we have again examined the decisions from other jurisdictions and find that they fully sustain the rule which we have adopted. *Graves v. Graves*, 132 Iowa 199, 109 N. W. 707, 10 L. R. A. (N. S.) 216; *Pico v. Cohn*, 91 Cal. 129, 25 Pac. 970, 27 Pac. 537, 25 Am. St. 159, 13 L. R. A. 336; *Steen v. March*, 132 Cal. 616, 64 Pac. 994; *Friese v. Hummel*, 26 Ore. 145, 37 Pac. 458, 46 Am. St. 610; *Donovan v. Miller*, 12 Idaho 600, 88

Pac. 82, 9 L. R. A. (N. S.) 524; *Guthrie v. Doud*, 33 Ill.
App. 68; *Hardeman v. Donaghey*, 170 Ala. 362, 54 South.
172; *Hass v. Billings*, 42 Minn. 63, 43 N. W. 797; *Greene
v. Greene*, 2 Gray (Mass.) 361, 61 Am. Dec. 454; *United
States v. Throckmorton*, 98 U. S. 61. The foregoing are but
a few of a legion of decisions sustaining and exemplifying to
its full extent the rule as stated in our own decisions. As
said by Judge Deemer, speaking for the supreme court of
Iowa in *Graves v. Graves, supra:*

"There is very little conflict in the cases upon this prop-
osition. In Kansas and in New York a different rule seems
to prevail, although in the latter state the authorities are
conflicting."

The appellants, however, contend that this rule has no ap-
plication where, as in this case, the perjury is practically
admitted. It is argued that, inasmuch as the rule rests in
the necessity of preventing continuous litigation of the same
issues, the admission of the perjury, by precluding the prob-
ability of such relitigation, destroys the applicability of the
rule. The premises, however, do not justify the conclusion.
An admission is but a form of evidence. The admission it-
self might be retracted by showing that it was a perjured
admission induced through influence, corruption or fear. But
for the application of the rule which we have announced,
the same opportunity for endless litigation would be present
in this case as in any other. The appellants' argument, as
it seems to us, assumes a distinction without any sound point
of difference.

The appellants, though admitting the rule that a judg-
ment at law cannot be set aside in equity for perjury alone,
urge as another exception that the rule has no application
where the party complaining of the judgment had no knowl-
edge of the existence of the real facts and by reasonable dil-
igence could not have discovered them, when such facts are
peculiarly within the knowledge of his adversary who failed
to disclose them. It is obvious that, as applied to perjury,

this is but another way of stating that the rule to which this court has given its allegiance has no existence. It ignores the real basis of the rule, namely, the avoidance of interminable litigation. To say that the commission of perjury is such a concealment of the real facts as to warrant a court of equity in a collateral proceeding to vacate the judgment founded on such testimony, is but to say that perjury itself is an exception to the rule that a law judgment cannot be set aside in equity for perjury alone. Moreover, it was admitted on the trial of this action, and the statement of facts in the damage suit which is in evidence here shows, that the intervener's attorney, though having denied the marriage relation in his answer, did not on the trial of that suit cross-examine either of the Freeburys as to the grounds for their statement that they were husband and wife. Even in cases where the rule of concealment does apply, authority is not wanting that equity will not interfere when the facts, though discovered after the trial, might have been established at the trial upon cross-examination. *Cairo & Fulton R. Co. v. Titus*, 27 N. J. Eq. 102. The very fact that, when the question was squarely presented to the Freeburys in the present action, they stated fully their grounds for believing that they were husband and wife, leads at least to a fair assumption that a cross-examination in the damage suit would have developed the same information.

As another exception it is urged that equity will set aside a judgment if the prevailing party, by some extrinsic or collateral fraud in addition to the perjury, has prevented a fair trial. Our own decisions recognize this exception. There is, however, nothing in this case bringing it within that exception. The only fraud pleaded and the only fraud sought to be proven was that the Freeburys in the damage suit alleged and testified that they were husband and wife. There is no other evidence of concealment of the real facts, nor any evidence of other extrinsic or collateral facts constituting

fraud, either alleged or proven. In *Pico v. Cohn, supra,* it is said:

"What, then, is an extrinsic or collateral fraud, within the meaning of this rule? Among the instances given in the books are such as these:. Keeping the unsuccessful party away from the court by a false promise of a compromise, or purposely keeping him in ignorance of the suit; or where an attorney fraudulently pretends to represent a party, and connives at his defeat or, being regularly employed, corruptly sells out his client's interest. *United States v. Throckmorton,* 98 U. S. 65, 66, and authorities cited. In all such instances the unsuccessful party is really prevented, by the fraudulent contrivance of his adversary, from having a trial; but when he has a trial, he must be prepared to meet and expose perjury then and there. He knows that a false claim or defense can be supported in no other way; that the very object of the trial is, if possible, to ascertain the truth from the conflict of the evidence, and that, necessarily, the truth or falsity of the testimony must be determined in deciding the issue. The trial is his opportunity for making the truth appear. If, unfortunately, he fails, being overborne by perjured testimony, and if he likewise fails to show the injustice that has been done him, on motion for a new trial, and the judgment is affirmed on appeal, he is without remedy."

Finally, it is urged that the rule has no application where it is shown that the jurisdiction of the court has been imposed upon. The facts in this case, however, show that the jurisdiction of the court has been no more imposed upon than in any other case where it has made a finding based upon perjured testimony. Conceding the fact that Allie Freebury was an unmarried woman, the court still had the same jurisdiction over an action for damages for her injuries that it would have had had she been a married woman. The fact that an improper party was joined with her as plaintiff in the damage suit has nothing to do with the court's jurisdiction to try the question of her injury and to award judgment upon the verdict therefor.

II. What we have said is clearly sufficient to dispose of this appeal by an affirmance of the judgment. There is, how-

ever, another and all sufficient ground wholly devoid of the seeming harshness of the rule upon which the first ground rests.

The complaint in the damage suit did not ask for any relief, compensation or damages in favor of Thomas Freebury personally, or by reason of his alleged marital relation with the injured woman, nor did it contain a single averment upon which such a prayer could have been reasonably predicated. There was no claim on his part for loss of society, services, companionship or solace of his alleged wife, nor any claim in the complaint on his part for expense and outlay of either time or money whereby he personally claimed to have been damaged. The whole of the enumeration of the items of damage contained in the complaint relates to the woman's own injuries and their consequences to herself personally. This enumeration concludes as follows:

"That by reason of said injuries, suffering and sickness she has been compelled to employ the services of physicians and the constant care and attention of nurses and her husband, for which she has been compelled to pay, and will be compelled to pay in the future, as she verily believes, and therefore states to be a fact, the sum of $1,000."

On such a complaint it is too plain for argument that, even had there been no question as to the validity of the marital relation of the plaintiffs, no valid judgment could have been rendered in favor of the husband as such, nor because of any loss personal to him.

There was some evidence in the damage suit which, taken out of context and strained to the utmost, might be held pertinent to such an issue had it been presented in the pleadings. He testified that he helped nurse the woman and employed nurses for the same purpose, and that she was totally incapacitated for any service such as she had been accustomed to perform, namely, that of chambermaid in a lodging house and cooking for men in a boarding house. If this evidence, or any of it, had been intended to furnish a

predicate for any recovery for his services, expenses or loss of her services to him, it would have been clearly inadmissible under the pleadings. That it was not then construed as so intended, either by court or counsel for the defense in that suit, is made plain by the fact that it was admitted without any objection whatever on that ground. This evidence was as clearly inadmissible for the purpose now urged by the appellant here, under the complaint actually presented in the damage suit, as it would have been had the lack of the validity of the alleged marital relation been then as fully known as it is now, or as it would have been had the woman sued alone for her injuries. Not having been objected to at all, even had it been inadmissible for any purpose, a supposed augmented recovery on its account could not now be urged as a ground in equity for vacating the judgment.

The connection in which the evidence was given, however, clearly shows that it was merely intended as showing the extent and seriousness of the woman's injuries. It would have been admissible for that purpose had she sued as a single woman and also for the purpose of recovering for the expenses and loss of earnings for herself occasioned by the injury. The fact that a judgment in favor of the supposed community was rendered embodying the same elements is wholly immaterial. It is purely fanciful to say that the jury would, and wholly wrong to say that it should, award a greater amount for these same elements to the community than to an unmarried woman, or to a woman long deserted by her husband, who had, as this woman had, in any view of the case, a child to support. The suggestion that a knowledge of the meretricious character of her relations to Freebury might have led to a reduced verdict is sufficiently answered by the plain fact that in law it could not have been permitted to do so, and upon a proper request the trial court must have so instructed.

In addition to all this, the court's instructions in the damage suit clearly limited the recovery of the supposed com-

munity to such damages as the injured woman could have recovered had she sued as an unmarried woman. We must assume that the jury followed the instructions. The instructions are long and we shall not extend this opinion, already too long, by quoting them. We have examined them with care. They contain not a syllable upon which any judgment in favor of the supposed husband, as such, could have been based. They were strictly confined to the complaint and evidence admissible under the complaint, as we have construed it.

The judgment is affirmed.

Morris, C. J., Fullerton, and Main, JJ., concur.