RAFAEL CARRIÓN PACHECO, Plaintiff and Appellant, *v.* CHARLES E. LAWTON ET AL., Defendants and Appellees.

No. 5930.   Argued December 22, 1932.—Decided January 26, 1933.

H. G. Molina, Henri Brown, and C. Ruiz Nazario for appellant. F. Soto Gras for appellee Lawton.

Mr. Justice Córdova Dávila delivered the opinion of the Court.

The plaintiff alleges that he acquired the two parcels of land which, consolidated into a single property, are described in the complaint, for the purpose of urbanizing the said land by constructing a street and dividing the property into lots for sale, which purpose was carried into effect; that when the deed of purchase and sale to the said parcels so combined was executed, a verbal agreement for the purchase of lots in the new urbanization existed with several of his neighbors and friends, among whom were the defendants Charles E. Lawton and George H. Joy; that immediately after the purchase the plaintiff called all of the said friends so that they might select the location and size of the lot desired, and explained to them that his plan was to make a choice residential section and with that in view he would not allow nor sell any lot with a frontage of less than twenty meters and would not permit more than one dwelling house for each twenty meters frontage, and explained to them certain other restrictions which he intended to impose, a provisional plan being made dividing the property into twelve lots of the dimensions indicated by the prospective purchasers; that the plaintiff sold

to defendant George H. Joy lot No. 4 with a frontage of 28.59 meters and subject to the restriction that only one house should be built on that lot; that subsequently defendant George H. Joy sold to Dr. Arturo L. Carrión a strip of lot No. 4 with a frontage of 8.59 meters and extending its full depth, and defendant Joy sold to defendant Vicente Rodríguez Rivera the remainder of the said lot with a frontage of 20 meters facing the street; that on October 30, 1926, the plaintiff acquired from Vicente Rodríguez Rivera the said remainder of the lot and has built on it a house of reinforced concrete worth not less than $8,500; that the plaintiff sold to defendant Charles E. Lawton lot No. 3 segregated from the described consolidated property and measuring 33.66 meters on its front, stating in the deed, among other things, "that the purchaser or his successor in interest shall not build on this lot more than one dwelling house and it shall be located at a distance of 25 feet from the line facing the street open on the said property."

As a first cause of action against the defendants, the plaintiff alleges that, in stating in the deeds of sale to defendants Charles E. Lawton and George H. Joy that not more than one dwelling house should be built on each of the said lots, it was the plaintiff's intention, and it was so understood by purchasers Lawton and Joy and the other purchasers of lots in the property urbanized by the plaintiff, that no dwelling house should be built on a lot having less than twenty meters frontage, just as if the said condition had read that "the purchaser and his successors in interest bind themselves not to build a dwelling house on a lot that has less than 20 meters frontage, nor make a segregation which would leave a lot already built on with less frontage than 20 meters"; that in accordance with this restriction there were various modifications of the lots into which the said property originally and provisionally was divided, new lots being formed by segregations until at present it is divided into fifteen lots, of which

seven have frontages of not less than twenty meters, on which five houses are built, without taking into account the house built on the plaintiff's lot; that the clauses transcribed in the deeds executed by the plaintiff in favor of defendants Charles E. Lawton and George H. Joy should be reformed so as to harmonize with the real intention and purposes of the plaintiff.

In the second cause of action a recital is made of the action prosecuted by Charles E. Lawton against Vicente Rodríguez Rivera, wherein judgment was rendered for the plaintiff by the District Court of San Juan and affirmed on appeal by this Supreme Court. In that judgment defendant Vicente Rodríguez Rivera was ordered to discontinue the construction begun on the part of lot No. 4 which was sold to him by Joy and to raze any portion of the building already erected. It is alleged also that after that judgment had been rendered by the District Court of San Juan, this plaintiff, Rafael Carrión, bought from Vicente Rodríguez Rivera the lot involved in that action and commenced to build a dwelling house which was finished later; that while the said house was being built the then plaintiff and now defendant Charles E. Lawton moved the District Court of San Juan for an order directed to this plaintiff, Rafael Carrión, requiring him to show cause why he should not be punished for contempt, and for a mandatory injunction ordering him to stop building the house already begun and to demolish the part of it then standing; that the district court overruled the motion of Lawton and the Supreme Court, holding that the said judgment in the action of Charles E. Lawton against Vicente Rodríguez Rivera was *res judicata* and was binding on the plaintiff here as the successor in interest of Vicente Rodríguez Rivera, reversed that ruling of the District Court of San Juan and rendered judgment ordering this plaintiff to raze the house built by him on the said lot within ninety days from the date of the receipt of the mandate in the office of the clerk of the District

Court of San Juan; that the judgment against Vicente Rodríguez Rivera was influenced and obtained by means of false testimony given by the plaintiff there and defendant here, Charles E. Lawton, at the trial of the said case in the sense that there was a plan of urbanization when he, Lawton, bought from this plaintiff; that this plan of urbanization consisted of the division of the said property into twelve lots, all of which were subject to a common restriction prohibiting the construction of more than one dwelling house on each lot, as indicated on the said plan; that the said plan of urbanization was recorded in the registry of property and defendant Charles E. Lawton, there plaintiff, was induced to buy the said lot because of that plan or urbanization and the restriction; that when Charles E. Lawton bought that lot, two concrete pillars had been set up at the entrance of the street called "Carrion's Court"; that the judgment rendered on February 4, 1925, by the District Court of San Juan should be set aside, as should be also that rendered by the Supreme Court on June 26, 1928, ordering the plaintiff to raze the house built on that lot.

As a third cause of action, the plaintiff alleges that if the court should hold that the deeds referred to should not be reformed or that the judgment should not be set aside, then the restriction should be annulled, because, due to the changed conditions and to the construction of houses on the property and on lots with a frontage of only twenty meters, the said restrictions have no practical value. Based on these allegations, the plaintiff prays that the deeds executed between plaintiff Rafael Carrión Pacheco and defendants Charles E. Lawton and George H. Joy be reformed to conform to the real intention of the parties; that the judgment rendered by the District Court of San Juan in civil case No. 3033 be set aside, and that the judgment rendered by the Supreme Court of Puerto Rico on June 26, 1928, be set aside also.

The defendants deny the essential allegations of the complaint and allege, among others, the following special defenses:

"*Res judicata.* Plaintiff Carrión having acquired from defendant Rodríguez Rivera the house in litigation during the pendency of the action and having proceeded with the action in the name of the assignor, the parties to the former action and to this action are the same and the same questions of fact and of law now argued were raised or could have been raised in the former action, the fundamental one being whether the restriction imposed by this plaintiff himself on lot No. 4 is valid and effective, as was held in the former action. Therefore we say that the judgments in suit No. 3033 and its incident constitute *res judicata.*

"*Waiver.* We allege that whatever right the plaintiff may have had by virtue of the verbal agreement said to have modified the restrictive clause was waived by him in not exercising it in all of his former opportunities, which are mentioned in this answer.

"*Laches.* We allege that the plaintiff was guilty of inexcusable delay which bars him from invoking the verbal agreement, inasmuch as he allowed more than six years to transpire after he could have exercised his right without taking any action, especially when he allowed in consequence that the court render a judgment adverse to that agreement and based on a false statement known to the plaintiff.

"*Election of remedy.* We allege that as the plaintiff had full knowledge of the cause of action now set up by him in order to reform the contract and vacate the judgment, and instead of doing so he elected from the start to rely on his original defenses in suit 3033 which he prosecuted to the end, he can not now go back and avail himself of this other remedy of reformation of contract and nullity of judgment."

After the trial court rendered judgment dismissing the complaint, the plaintiff took this appeal and has assigned ten errors. The first two assignments relate to the first cause of action and read as follows:

"The District Court of San Juan, in its judgment of October 20, 1931, erred in holding that the evidence did not justify reformation of the contracts of Charles E. Lawton and George H. Joy as prayed for by the plaintiff in his first cause of action.

"The District Court of San Juan erred in adjusting in favor of the defendants the conflict in the evidence as to the cause of action on reformation of contract, and acted with passion, prejudice, and partiality."

It is a fact admitted by both parties that Dr. Carrión built a house partly on the strip of 8.59 meters segregated from lot No. 4. This litigation wholly originated in the building of a house on the remainder of lot No. 4 which was reduced to a frontage of 20 meters. The plaintiff claims the right to a reformation of the clauses copied into the deeds executed by him in favor of defendants Charles E. Lawton and George H. Joy, in accordance with the allegations of his first cause of action. The trial court held that the plaintiff's evidence in support of this cause of action is extremely deficient. It has not been shown that the court was influenced by passion, partiality, or prejudice, and there is no reason for rejecting its conclusion. Furthermore, the defendants have pleaded the defense of *res judicata* which, if sustained, makes it unnecessary to determine now whether or not the action for reformation of contract, as it arises from the averments of the complaint, can be exercised within our civil law. We have examined carefully the complaint filed in the original action brought by Charles E. Lawton against Vicente Rodríguez Rivera. It is alleged therein that the consolidation of the two parcels of land bought by Carrión was made for the purpose of parcelling out the said land, and a plan of the property so consolidated was drawn by which it was divided into twelve lots, six on each side of a street, eight meters wide and laid out from north to south. It is alleged also that the then plaintiff, Charles E. Lawton, knowing of the plan and induced by Carrión, acquired lot No. 3, as described in the deed of sale containing, among others, the restriction that not more than one dwelling house could be built on each lot. These facts appear to be denied in the answer filed in that action by Vicente Rodríguez Rivera. The following is copied

from the opinion of the District Court of San Juan in that case:

"A house having been built on lot No. 4 bounded on the north by lot No. 3 of the plaintiff, the defendant can not build another house on the remainder of said lot No. 4 without violating a restrictive clause inserted in the original deed of sale executed by Carrión to Joy (from whom Rodríguez acquired) which was recorded in the registry of property. That clause was clearly inserted in the deed for the benefit of all who had acquired or would acquire lots at that place, as did the plaintiff, under the impression derived from the acts of Carrión that they were doing so within a general plan of urbanization."

That judgment was affirmed on appeal by the Supreme Court. It is evident, therefore, that the court held in the original action that there was a general plan of urbanization which contained certain restrictions and one of them was that only one dwelling house could be built on each lot. These facts, found conclusively and finally by the judgment then rendered, are binding on Vicente Rodríguez Rivera and his successor in interest, plaintiff Carrión, who besides being the original owner of the consolidated property, initiated and carried out the plan of urbanization and established the restrictions. The plaintiff seeks a reformation of the contract by the inclusion of a clause which, if accepted, would set aside the final pronouncements of the court in the original action and destroy the effects of *res judicata*. If, as alleged by Carrión, in accordance with the agreement entered into, the clause should recite that the purchaser and his heirs bind themselves not to build a dwelling house on a lot of less frontage than twenty meters, nor make any segregation that would leave a lot already built on with a less frontage than twenty meters, then the pronouncement of the court that not more than one dwelling house could be built on each lot would have no basis and the restriction alleged and proved in the original action would be practically nullified. It is evident that the two clauses are in conflict. The subsistence of one implies

the nullification of the other. We know that this is the purpose followed by the plaintiff, but we have desired to emphasize the effects which the reformation prayed for by him would produce in order to show that the decisive and real question at issue which determined the conclusion reached in the original action would be virtually nullified by adopting the clause attempted to be incorporated into the contract. What is really sought is the elimination of the former clause and its substitution by the one now proposed by the plaintiff. If the allegations and testimony of Carrión in the present case are true, the facts have existed since the beginning of the plan of urbanization, and that being so, the defendant in the original suit, Rodríguez Rivera, had an opportunity to submit then to the court the same question which his successor in interest, Carrión, now submits to our consideration. It is fruitless to allege that Rodríguez Rivera was ignorant of these things which Carrión, as the original owner and organizer of the plan, knew perfectly well. Rodríguez Rivera knew from the registry that a plan of urbanization had been adopted. It is so stated in the deed of sale to Joy and it so appears in the record. Rodríguez Rivera had knowledge of the restriction from the registry and by the explanation made by Carrión in the deed of purchase and sale and stated in the public deed executed between Joy and Rodríguez Rivera. He could have asked Carrión for all of the information which the latter had in regard to the plan of urbanization and the scope of the restriction and could have pleaded as defense, if believed by him to be true, the same facts now alleged by Carrión in his prayer for reformation of the contract.

In his position as successor in interest of Rodríguez, Carrión stands in his place and can not succeed with allegations which the latter is barred from making. As affecting both Rodríguez Rivera and Carrión, the conclusion of the court that not more than one dwelling house could be built on lot No. 4 has the character of *res judicata*. This was the funda-

mental allegation made in the former action. It would have been impossible without it to render judgment for the plaintiff because the complaint would not have adduced facts sufficient to constitute a cause of action.

The third error assigned by the plaintiff as having been committed by the trial court is as follows:

"The District Court of San Juan erred in its judgment in holding that the judgment rendered in civil suit No. 3033 should not be vacated on the ground of having been obtained by means of the false testimony of Lawton, as prayed by the plaintiff in his second cause of action, after the assumption by the district court that Lawton's testimony was false as to the existence of the two concrete pillars with the sign Carrión's Court at the time of the acquisition by Lawton, as well as that the plan of urbanization was not noted in the registry of property. In so holding the court acted with passion, prejudice and partiality."

In considering this assignment we shall include the 4th and 5th assignments which, as well said by the plaintiff, are based on the same reasoning.

The plaintiff copies the second, third, fourth, and fifth averments of the original complaint filed by Lawton against Vicente Rodríguez Rivera, part of the testimony of the then plaintiff Lawton, some of the conclusions of the District Court of San Juan, of this Supreme Court, and of the Circuit Court of Appeals in order to show that the allegations and testimony of Lawton, said to be fraudulent, gave rise to these conclusions of the courts of justice based on false premises.

The following is a copy of the averments of the original complaint referred to by the plaintiff in his brief:

"2. That the consolidation referred to was made for the purpose of urbanizing that property, a plan of the property so consolidated being drawn by which it was divided into twelve lots, or six on each side of a street eight meters wide running through the property from north to south.

"3. That the consolidation, urbanization, and plan dividing it into lots and opening a street for their use were recorded in the registry of property and was also publicly advertised by the original

owner, Carrión, who made special mention of the urbanization and repeated divisions to buyers and persons interested in buying lots, giving the place the name 'Carrión's Court.'

"4. That the plan of urbanization contained also certain restrictions about building on the lots, among them one prohibiting the building of more than one dwelling house on each lot.

"5. That the plaintiff, thus informed of the plan and induced by Carrión, acquired the lot marked No. 3, as described in the deed executed before Salvador Suau Carbonell on February 13, 1923, containing the restriction mentioned as to building, which was recorded in the registry of property."

Comparing the allegations of Lawton in the original suit with those of Carrión in the present action, it is observed that both litigants agree on certain important particulars, that on others there are slight differences, and that on some they differ on essential questions. Lawton alleges that the consolidation was made for the purpose of urbanizing the property and that a plan of the property was made which divided it into twelve lots. Carrión alleges that the land was acquired for the purpose of urbanizing it and a provisional plan was drawn by which the property was divided into twelve lots of the dimensions indicated by the prospective buyers (second and fourth averments of the complaint). Lawton alleges that the plan of urbanization contained certain restrictions in regard to building on the lots, among which was one forbidding the building of more than one dwelling house on each lot. Carrión alleges that the lots sold to Joy and Lawton were subject to the restriction that not more than one house should be built on each of the said lots. Lawton alleges that Carrión gave repeated information of the urbanization and plan of division to purchasers and persons interested in buying lots, calling the place Carrión's Court. Carrión alleges that he invited all of the said friends to choose the location and size of the lot wanted and explained to them that he planned to make a choice residential section. The allegation about the frontage of twenty meters, denied

by the defendant, is the fundamental point of the controversy between the parties.

The plaintiff bases his prayer for setting aside the judgment on the averment that it was obtained by Lawton by means of false allegations and testimony. We know the sworn allegations of Lawton which the plaintiff characterizes as false and fraudulent. We will copy from the testimony given by the plaintiff on that occasion the statements which have given rise to this charge of fraud:

"Q. Have you had any business with Carrión referring to the purchase of land in Santurce?

"A. Yes.

"Q. Of what did it consist?

"A. I bought a building lot in Carrión's Court.

"Q. Does that name Carrión's Court appear anywhere in writing?

"A. On the plans.

"Q. Anywhere else?

"A. I think at the entrance to MacLeary Street.

"Q. Is that name written on the pillars at the entrance to that property?

"A. Yes.

"Q. Did you enter into negotiations with Carrión for purchasing any land from him?

"A. Yes.

"   .    .    .    .    .    .    .    .    .    .

"Q. What induced you, Mr. Lawton, to buy this lot No. 3 of the land of Mr. Carrión?

"   .    .    .    .    .    .    .    .    .    .

"A. I believed that I was buying a lot in a property which had certain restrictions and lots of certain sizes in what was called Carrión's Park, in order to be more or less isolated.

"Q. When you bought this lot, was the land to be divided or were you shown a plan of the division?

"A. I bought the lot with the plan before me.

"Q. Is that the plan which I present here?

"A. No. That is not the plan; Mine has my name written on it.

"Q. But is that the original plan?

"A. A copy.

"Q. When you bought this lot was that land known by the name of Carrión's Park?

"A. Yes.

"Q. Was it known by that name?

"A. Yes.

"Q. Do you know the house built by Dr. Carrión?

"A. Yes.

"Q. Were you in Puerto Rico when that house was built?

"A. No, I was in the North on vacation."

Great importance is attributed to the testimony of Lawton about the name Carrión's Court stamped on the pillars at the entrance of MacLeary Street. Lawton said that when he bought the lot that property was known by the name of Carrión's Park. There is no testimony that at that time the consolidated property was known by this name. Carrión testified that the pillars were made about the middle of the year 1922. To prove the date he offered in evidence, among other documents, a bill of Mr. Nechodoma who made a mosaic work of glass with the name Carrión's Court to be placed on the street. This bill is dated May 20, 1922. The deed of sale to the lot executed by Carrión to Lawton is dated February 13, 1922. On April 3, 1922, when two months had not passed since the sale of the lot to Lawton, certain materials for the mosaic work appear to have been sold and delivered to Carrión. So, although it is true that the pillars had not been constructed when Lawton bought the lot, the fact is that very shortly before that date they had been ordered or were in process of construction. Lawton's testimony that the pillars were built when he bought the lot is not clear. We should not forget that the witness was testifying in 1924, or two years after the construction of the pillars. Just after he had testified that he purchased the lot he was asked whether the name Carrión's Court appeared written on the pillars at the entrance to the property and answered affirmatively. Later he said that when he bought the lot the property was known by the name of Carrión's Park, and it has not been shown that this assertion is untrue.

This is Lawton's testimony which is said to be false, and in our opinion that imputation has not been proved. Let us now see how the District Court of San Juan interpreted this testimony. It is said in the opinion delivered by that court that the urbanized property was given the name of Carrión's Court and at its front entrance two concrete pillars bearing that name had been erected. The Supreme Court said in the opinion delivered in affirming the judgment that at the entrance to the street there were two pillars ostensibly bearing the name Carrión's Court. It is not venturesome to say that if no mention had been made of these pillars with their inscriptions, the same conclusions would have been reached and the same judgment rendered.

Both courts speak of the preliminary acts of Rafael Carrión Pacheco who drew up a general plan dividing the property into lots numbered from 1 to 12 facing a street with six lots on each side and placed two pillars at the entrance bearing the name Carrión's Court. All of these acts, according to the opinion of this Court affirming the judgment of the court below, show clearly and explicitly the existence of a general improvement plan exclusively and privately for the use and enjoyment of future buyers. So it was not the two pillars placed at the entrance of the street with the name Carrión's Court which gave rise to the judgment of the court, but all of the acts performed by Carrión. There is no reason for supposing, as we have said, that the same judgment would not have been rendered if no mention had been made in the original action of the pillars and the inscriptions made on them. Now, the fact that the inscriptions did not appear from the first moment does not prove the inexistence of a plan with the name in question applied to the urbanization. It is natural that the name suggested itself after the acquisition of the property by Carrión and it possibly suggested itself simultaneously with the urbanization project. The building of these pillars shortly after the acquisition of the

property by the plaintiff and the inscription of his name thereon is a clear and explicit demonstration that the purpose existed of applying that name to the urbanization.

In order to set aside a judgment for fraud it must be apparent that the imputed fraud was its only basis and that if there had been no fraud the judgment would not have been rendered. *Dringer* v. *Erie R. Co.,* 42 N. J. Eq. 573.

The great majority of decisions hold that the mere fact that perjury is committed by the party who recovers a judgment is no reason for setting it aside. *Robertson* v. *Freebury et al.,* 87 Wash. 558, 152 Pac. 5. The averments of a complaint may be erroneous or uncertain and yet made in good faith in the belief that they are true. When the allegation is made in bad faith, with knowledge of its falsity, if by virtue thereof a judgment is recorded which otherwise would not have been rendered, then the prejudiced party has a right to be protected by the principles of justice and equity. Extrinsic fraud which renders a judgment void, as defined by Lord Cairns in *Patch* v. *Ward,* 3 L. R. Ch. 203, is the effective fraud which charges *malus animus* against the person to whom it is imputed, *mala mens* set in motion and acting in order to derive undue advantage from another person with the real purpose of knowingly defrauding him.

As to the general plan which divides the property into twelve lots, six of which are on each side of a street running through the property, the evidence is not conflicting. The plaintiff alleges also that "a provisional plan was made dividing the property into twelve lots of the dimensions indicated by the prospective purchasers," all of which confirms the existence of two plans, one provisional and the other general, the latter being the one mentioned in the registry of property. With reference to the general plan it was alleged by Lawton in the original action that the consolidation, urbanization and plan dividing the property into lots and opening a street for their use were noted in the registry of property. This

verified averment is also said to be false, but was denied by the then defendant and about which not a word was said by Lawton in his testimony. The conclusions of the district court and of the Supreme Court in the original action are based exclusively on the documentary evidence. It appears from the certificate to be found in the transcript that the record in favor of Lawton was made in February and that in favor of Joy in April, 1922. Lawton was the first purchaser of a lot to record his title. It is stated in the record of the lot bought by Lawton that said lot is marked No. 3 on the plan of urbanization of the principal property and that it is a condition of the sale that the purchaser or his successor in interest shall not build more than one dwelling house on that lot. In the record in favor of Joy it is stated that his lot is marked No. 4 on the urbanization plan of the main property and that the purchaser, his heirs and successors in interest bind themselves to build only one house on that lot. The district court relied on this evidence for saying in conformity with the truth that those restrictions were made to appear in the registry of property. And on this same evidence the Supreme Court based its statement that lots Nos. 3 and 4 were recorded in the registry of property with express mention of the plan of urbanization of the main property. There have been presented in evidence in the present suit other documents of sale of lots in which the registry shows the same reference to the plan of urbanization and to the restrictions. The foregoing is sufficient to justify dismissal of the third, fourth and fifth errors assigned as having been committed by the trial court.

It is alleged in the sixth assignment that "the District Court of San Juan erred in not holding in its judgment that due to the changed conditions the restrictive clause had no practical value and that defendant Lawton is barred in equity from insisting on such restrictions, as prayed for by the plaintiff in his third cause of action, and in holding that a decision in that sense was not justified by the evidence, and

in so holding the said court acted with passion, prejudice, and partiality.''

The conditions existing in the urbanization when the original action was brought are practically the same as those which existed when the present action was brought. Carrión admits that there has been no change in Carrion's Court for more than five years. This was said by him in March, 1931. It is evident that the defendant Rodríguez Rivera had an opportunity to plead any alteration or change that might constitute a good defense. It has not been proved that changes have occurred between then and now to justify the remedy sought by the plaintiff. We hold that Carrión is estopped from setting up this defense which was not presented by his predecessor in interest when he was sued six years prior to the institution of the present action. It has not been shown that the trial court was influenced by passion, prejudice, or partiality. It is well to say that according to the evidence introduced, no houses have been built on lots marked Nos. 1, 2 and 6. Nine houses have been built on the remainder of the property, without including that of Carrión on lot No. 4 which the courts have ordered to be demolished. A house and part of another appear to have been built on lot No. 5 and the same is the case regarding lot No. 12. One house has been built on each of the other lots, exclusive of that of Carrión the destruction of which has been ordered. Carrión testified that all of these houses were built prior to the sale from Joy to Rodríguez, with the exception of one built by Ana A. Márquez on lot No. 5. From the foregoing conclusions the sixth and seventh assignments relating to the alleged change of conditions are without merit. The eighth and ninth assignments in which it is alleged that the judgment rendered is contrary to law and to the preponderance of the evidence are also dismissed. It is alleged finally that the trial court erred in imposing the costs upon the plaintiff. We hold that this last assignment should be dismissed.

The judgment appealed from must be affirmed.